

**IT IS ORDERED as set forth below:**

Date: October 16, 2018

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SHAWNTAE HARRIS | ) | Case No. 18-21635-JRS |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SHAWNTAE HARRIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | |
| SHAYLA STEVENS and TOZZI LAW, LLC | ) | Case No. 18-02043-JRS |
| | ) | |
| Defendant. | ) | |

**ORDER**

The issue before the Court is whether the exception to the automatic stay in § 362(b)(4) for a governmental unit exercising its police and regulatory powers is broad enough to include

1

the imposition of sanctions by a court, including incarceration, in connection with a motion to compel discovery and for contempt against a non-attorney debtor in a post judgment collection proceeding. This Court concludes it is not so broad and that such proceedings are subject to the automatic stay. Although that conclusion seemed rather obvious to this Court, there does exist some case law - including at the level of the federal courts of appeal - that makes the issue more confusing than it should be with respect to which fact situations the exception should be applied in the context of sanctions motions and orders in non-bankruptcy forums.

Debtor Shawntae Harris ("Ms. Harris") filed for Chapter 11 bankruptcy relief on August 18, 2018. She filed this Adversary Proceeding on August 22, 2018, seeking injunctive relief against the continuation of state court proceedings on a Motion to Compel Discovery and for Contempt (the "Motion") filed by Creditor Shayla Stevens ("Ms. Stevens") by and through her counsel, Tozzi Law, LLC ("Tozzi Law") [Adv. Doc. 1]. Because a hearing in the state court was scheduled for August 24, 2018 on account of Ms. Harris' failure to appear at a post-petition contempt hearing in the state court on August 20, 2018, this matter came on for an expedited hearing before this Court on August 23, 2018, at which time the Court announced on the record that it was granting a temporary restraining order ("TRO") to maintain the status quo while the Court considered the issue of whether the automatic stay applied to the state court proceeding [Adv. Doc. 6]. After a continued hearing on September 6, 2018, the Court extended the TRO until October 16, 2018 and scheduled an additional hearing on the matter for that date [Adv. Doc. 11]. The relief sought by Ms. Harris is a determination that the automatic stay applied to the contempt proceedings in the Cobb County Superior Court such that the hearing that took place on August 20th was a violation of the stay and that sanctions should be levied against Ms. Stevens and Tozzi Law for "causing the [August 20th] hearing to go forward." [Adv. Doc. 1].

2

THE STATE COURT PROCEEDINGS

The Motion to Compel Discovery and for Contempt was filed in the Cobb County Superior Court on April 26, 2018. It arises out of Ms. Stevens' attempt to collect a judgment in her favor against Ms. Harris in the amount of $6,400,000 that was rendered by the Superior Court of Cobb County on March 3, 2014, a fi. fa. for which was issued on May 20, 2014 [Civ. Case No. 11-1-6943]. On August 1, 2018, the Honorable Reuben M. Green of the Cobb County Superior Court issued an order granting the motion, ordering Ms. Harris to produce all documents related to the motion, and awarding reasonable expenses and attorney's fees. The order further stated that: "*Unless* [the production of documents and payment of fees and expenses] *have been fully complied with* [by August 10, 2018], all parties and counsel shall report…on August 13, 2018…at which time the Court will determine whether to hold Shawntae Harris in willful contempt." [emphasis added]

Prior to the August 13th hearing, Ms. Harris' former state court counsel Durante Partridge filed a Request for Clarification and a Response to Plaintiff's Request for Production of Documents asserting that Ms. Harris had substantially complied with discovery requests and seeking clarification as to the scope of some of the Ms. Stevens' document production requests. During the compliance hearing on August 13, 2018, Ms. Stevens' state court counsel, Douglas Tozzi, told Judge Green that he was amenable to giving Ms. Harris another week to produce additional documents [Adv Doc. 13, p. 21]. The transcript from the hearing reveals the following;

\*        \*        \*        \*        \*

> Judge Green: So I want this stuff produced. I want this resolved, whether that's paying the total judgment or y'all work something out, fine. It doesn't matter to me. But I don't want to see you all back in front of me on discovery dispute. So you either give the

stuff or you go to jail until they come in and show me all the line items they want and you provide every one of those line items. [Adv Doc. 13, p. 22-23].

\* \* \* \* \*

Judge Green: Anything else other than the two dates that I've said, that you need?

Mr. Tozzi: No, Your Honor, Thank you.

Judge Green: All right. So the 17th and then the 20th. [Adv. Doc. 13, p. 27].

\* \* \* \* \*

Judge Green: If she is – Mr. Tozzi if you'd listen for a second. *If she is in, what you believe to be, sufficient compliance, even if it's not perfect, but if it's what you're comfortable with,* let the other side know and *y'all don't need to come on that Monday* [August 20th] [emphasis added]. If it's sufficient for you to do the deposition and then you want more discovery after that, we can address more discovery in the future. But I don't want to make everybody come if we're close to compliance, at least sufficiently close that you can do your deposition. [Adv. Doc. 13, p. 29-30].

\* \* \* \* \*

On or around Thursday, August 16th Mr. Partridge informed Mr. Tozzi that he was terminated by Ms. Harris, although this is disputed by Ms. Harris.[1] On August 17th Mr. Tozzi stated in an email to Judge Green's Staff Attorney regarding the August 20th hearing: "I suspect we will need to attend the compliance hearing as I am uncertain as to the current status given this [Mr. Partridge's termination] development." [Adv. Doc. 7]. Ms. Harris filed her petition under Chapter 11 the next day on August 18, 2018 [Bkry. Doc. 1] and informed the state court and opposing counsel of that fact prior to the August 20, 2018 hearing. Neither Ms. Harris' new state court counsel, Gary Freed, her bankruptcy counsel, Shayna Steinfeld, nor the Debtor herself

---

[1] Ms. Harris contends she did not terminate Mr. Partridge, but just hired additional counsel, Gary Freed. Mr. Freed and Ms. Harris contend that they both thought Mr. Partridge would attend the August 20th hearing. They also contend he never provided them with a copy of the Rule Nisi.

4

attended the hearing on August 20th because they thought it was stayed on account of the bankruptcy, and that Mr. Partridge would appear to advise Judge Green of the bankruptcy. Judge Green clearly thought otherwise and issued a rule nisi setting a hearing on August 24th to address Ms. Harris' contempt regarding discovery and the failure to appear. Ms. Harris filed this adversary proceeding to stay the hearing scheduled for the 24th and obtain a permanent injunction against further proceedings in the state court on August 22, 2018 [Adv. Doc. 1].

## DISCUSSION

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362 provides for an automatic stay of actions against the debtor and property of the estate, including the continuation of judicial proceedings against the debtor that began before the bankruptcy petition was filed. 11 U.S.C. § 362(a)(1). The stay is "one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors." S. REP. 95-989, 54, 1978 U.S.C.C.A.N. 5787, 5840. While the stay is broad, the Code does provide exceptions in certain circumstances. 11 U.S.C. § 362(b). In particular, § 362(b)(4) states:

> **(b)** The filing of a petition … does not operate as a stay—
>
> **(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power; 11 U.S.C. §362(b)(4).

This exception "serve[s] to insure uninterrupted governance of those terms of state law which protect the public welfare." *Matter of Bell*, 215 B.R. 266, 274 (Bankr. N.D. Ga. 1997). The legislative history of the provision indicates that it was designed to address situations "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental

5

protection, consumer protection, safety, or similar police or regulatory laws…" S. REP. 95-989, 52, 1978 U.S.C.C.A.N. 5787, 5838.

An analysis under § 362(b)(4) "requires a court to determine whether the action in question is undertaken by a governmental unit and whether it is an action enforcing that unit's police or regulatory powers." *In re Chintella*, No. 13-73481, 2014 WL 3672882, at *4 (Bankr. N.D. Ga. June 20, 2014). While the Eleventh Circuit has not adopted any test, courts have generally used two tests to assess whether an action should be exempt from the automatic stay under § 362(b)(4): the pecuniary purpose test and the public purpose test. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1108 (9th Cir. 2005); *see also Tennessee Water Quality Control Bd. v. Commerce Oil Co., Crocker (In re Commerce Oil Co.)*, 847 F.2d 291 (6th Cir. 1988); *In re Mohawk Greenfield Motel Corp.*, 239 B.R. 1 (Bankr. D. Mass. 1999); *In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011). Under the pecuniary purpose test, if the action taken by the governmental unit relates primarily to the protection of a pecuniary interest in the debtor's property, the automatic stay applies. *In re Chintella,* 2014 WL 3672882, at *5. If the action is more closely related to matters concerning public welfare, it may be excepted from the stay. *Id.* Similarly, the public purpose test looks to whether a proceeding is designed to "effectuate public policy" or "adjudicate private rights." *Id.* At *6. "[W]hen the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities." *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 390 (6th Cir. 2001).

6

In the instant case it is clear that the state court contempt proceedings are subject to the stay under either test. Ms. Stevens was conducting discovery in order to further the ultimate goal of collecting the $6.4 million judgment in her favor against Ms. Harris. Ms. Stevens filed the Motion in order to request the state court's assistance in compelling Ms. Harris to produce documents and to sanction her with a monetary penalty to reimburse Ms. Stevens for costs for Ms. Harris' perceived reticence in complying. While it is certainly in the public interest generally for parties to be able to collect judgments, it defies rational thought to assert that a court addressing a motion to compel or for contempt brought by the party seeking to collect a monetary judgment is somehow acting to "effectuate public policy" to a greater degree than it is assisting a private litigant in exercising her right to discovery and ability to collect that judgment.

Ms. Stevens argues in her responses [Adv. Doc. 7, 13] that Judge Green was proceeding sua sponte as to the hearings on August 20th and August 24th and, therefore, the proceedings were exempt from the stay under § 362(b)(4). To support the claim that the August 20th hearing was sua sponte, Ms. Stevens attached a portion of the hearing transcript for the August 13th hearing [Adv. Doc. 13]. Rather than support the claim that the Judge was proceeding sua sponte, the transcript clearly shows that Judge Green was acting in response to the Motion of Ms. Stevens and was relying on the representations of Mr. Tozzi as to whether Ms. Harris complied in order to determine how (and if) to proceed with the August 20th hearing. [*See excerpts from transcript above*]. In addition, this Court is not persuaded by Ms. Stevens' contention that Judge Green was proceeding on his own motion because the Rule Nisi was "prepared by and issued by the trial court." [Adv Doc. 13, p. 2]. Whether Judge Green chose to have one of the parties submit an order or chose to prepare the order himself is not dispositive of the question of whether the proceeding was sua sponte. The Motion was filed because Ms. Stevens sought the trial court's

7

assistance in forcing Ms. Harris to more fully comply with the production of documents. Ms. Stevens also wanted to recover and was previously awarded the costs and expenses associated with being forced to bring the Motion in the first place. Judge Green would not have asked the parties to appear for a hearing on the 20th had Mr. Tozzi informed the court that he was satisfied with the level of compliance because Judge Green clearly states that when he tells Mr. Tozzi: "If she is in, what *you believe to be*, sufficient compliance, even if it's not perfect, but if it's what you're comfortable with, let the other side know and *y'all don't need to come* on that Monday [August 20th] [emphasis added]."

Ms. Stevens relies on the Seventh Circuit Court of Appeals case of *Alpern v. Lieb* and the line of cases cited therein for her contention that "[a] court entering a show cause order or imposing sanctions on its own volition, rather than the behest of a litigant, acts as a governmental unit in sanctioning parties." [Adv. Doc. 7]. *See Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993). Among the cases cited in *Alpern* are *Papdakis v. Zelis,* wherein the California Court of Appeal held that "the imposition of sanctions . . . *for attorneys' frivolous or abusive litigation tactics* cannot be obstructed by federal bankruptcy laws." *Papdakis v. Zelis*, 230 Cal. App. 3d 1385, 1389 (1991)(emphasis added); *O'Brien v. Fischel,* which also involved Rule 11 sanctions against an attorney who later declared bankruptcy, 74 B.R. 546 (D. Haw. 1987); and *In re Wade,* which involved a disciplinary proceeding by the State Bar of Arizona against an attorney-debtor. 948 F.2d 1122 (9th Cir. 1991). These holdings are unsurprising, because, as the court in *O'Brien* stated: "[A]ttorneys are licensed by the state. Courts have an interest in punishing professional misconduct . . . in order to prevent future acts of the same type." *O'Brien*, 74 B.R. at 550. It is well established that "courts have an inherent power to regulate the conduct of attorneys as officers of the court." *Wallace v. Wallace*, 225 Ga. 102, 109 (1969). The sanctioning of an

8

attorney or pro se litigant by a court for filing a frivolous lawsuit or appeal under Rule 11 or similar rule is more in the nature of an exercise of its regulatory powers and, therefore, could arguably fall within the exception carved out by § 362(b)(4). Leaving aside the issue of possible discipline of the Ms. Harris' former state court attorney, which would not be stayed, these cases are clearly distinguishable from the instant case because Ms. Harris is not an attorney and was not a pro se litigant and the contempt of court issue arose from Ms. Stevens' Motion to Compel Discovery and not on account of a frivolous lawsuit or appeal, and not from a court acting on its own volition or to otherwise regulate the practice of law.

*Alpern v. Lieb* involved a pro se litigant, Eugene Alpern, who was sanctioned under Fed.R.Civ.P. 11 for filing a frivolous lawsuit in the district court which was subsequently dismissed. *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993). He appealed the dismissal and sanctions, then filed for bankruptcy and asserted that the proceedings in the circuit court should be stayed under § 362. *Id.* The Seventh Circuit chose to address the appeal of the dismissal and the appeal of the sanctions under Rule 11 as two separate proceedings and held that the appeal of dismissal of the case was not stayed as it had been brought by, not against, the debtor. *Id.* at 690. The court then decided to treat the appeal of the Rule 11 sanctions separately as a proceeding against the debtor - even though it acknowledged that it does not necessarily follow that it should be – and held that proceedings to impose sanctions under Rule 11 are exempt from the stay under § 362(b)(4). *Id.* The court focused on the idea that Rule 11 was created to sanction "unprofessional conduct in litigation" not to "reduce the net cost of litigation to the prevailing party." *Id.* Citing only to *Wade v. State Bar of Arizona* for the proposition that Rule 11 sanctions are actions brought pursuant to governmental powers, the Seventh Circuit conceded that the situation in *Wade* (attorney disciplinary proceedings by the state bar) was "not very close" to the

9

scenario before it because the Rule 11 sanctions in the case they were writing about were "filed by a private person." *Id*. Confusingly, the court then states that these differences "suffice[] to distinguish *Wade*," but then it concludes that these differences are not "conclusive against the application of § 362(b)(4). *Id.*

This Court finds the reasoning in *Alpern* to be troubling[2] and that the possible extension of its holding, if it is truly to be read to apply to all sanctions or contempt motions, would broaden the scope of the § 362(b)(4) exception beyond its intended purpose. The exceptions to the automatic stay in § 362(b) are to be read narrowly, *Hillis Motors, Inc. v Hawaii Auto Dealers' Ass'n,* 997 F.2d 581 (9th Cir. 1993), but the language and reasoning in *Alpern* certainly seems anything but that. For example, the reasoning therein that a private litigant bringing a Rule 11 motion is acting as a "private attorney general" so as to bring it within the scope of a governmental unit[3] exempt from the stay under § 362(b)(4) seems like a stretch to this Court, particularly when the rules of construction for that subsection call for a narrow interpretation. *Alpern*, 11 F.3d at 690. This Court would agree, however, that to the extent Alpern was going to persist with the appeal of the dismissal of his lawsuit *post-bankruptcy*, the court must have the authority and ability to regulate and sanction the conduct of the litigant before it without regard to the stay, at least as to the imposition, as opposed to the collection, of monetary sanctions. But where the underlying action is stayed by the filing of a bankruptcy case, such as what this Court

---

[2] The Court of Appeals notes that Alpern had filed a Chapter 7 case, yet the Court of Appeals said that no trustee had been appointed. That is not possible. The Court of Appeals also says the "[t]he concern behind the automatic stay is that until the appointment of a trustee, the debtor may lack an adequate incentive to defend suits against him; and once a trustee is appointed, he should be allowed to concentrate on marshalling the debtor's assets and preparing a plan of liquidation without distraction of defending against a flurry of last-minute sits by disappointed creditors." *Id* at 690 [citations to other Seventh Circuit cases omitted]. As previously noted, however, the primary purpose of the automatic stay is to provide the debtor with a "breathing spell" from collection activity. S. REP. 95-989, 54, 1978 U.S.C.C.A.N. 5787, 5840.

[3] "The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. 11 U.S.C.A. § 101(27).

has before it, what purpose is there to be served by pressing forward with a contempt motion related to a discovery dispute without obtaining relief from the automatic stay? There is simply no governmental police or regulatory power that would be advanced by allowing a state court to incarcerate a debtor for not producing documents in a post judgment collection action, the information in which documents the creditor could not even use to immediately collect the judgment because of the automatic stay, particularly when the creditor can try to obtain those same documents promptly in the bankruptcy proceeding.

Perhaps *Alpern* can be easily distinguished from this case based on the fact that Rule 11 specifically excludes discovery sanctions from within its scope. To the extent *Alpern* intended to go beyond that, including to permit a state court to incarcerate a debtor post-petition for failing to produce documents pre-petition in a post judgment collection action, this Court disagrees with it. Too many unnecessary questions arise with an expansive reading of *Alpern* with regard to the exception to the stay found in §362(b)(4), an exception to the automatic stay that is otherwise supposed to be read and applied narrowly.

In addition to this Court's concern with the reasoning of *Alpern*, it is clear that at least one bankruptcy judge in the Seventh Circuit – who was bound by its precedential authority - also did not agree with the reasoning of that case and found a way to rule that the stay did apply on facts virtually identical to those in this case. *See In re Benalcazar*, 283 B.R. 514, 532 (Bankr. N.D. Ill. 2002).[4] *Benalcazar* concerned a commercial landlord that had obtained a judgment against the debtor for breach of a lease ten months prior to the debtor's bankruptcy filing. *Id.* The landlord was attempting to collect its judgment by conducting discovery into the debtor's assets.

---

[4] Because the judge in *Benalcazar* could not simply disagree with *Alpern*, being bound by precedent, he concluded that *Alpern* may no longer be valid on account of the subsequent Supreme Court decision in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, wherein the Supreme Court held that when the Bankruptcy Code's text is clear the "sole function of the court…is to enforce it according to its terms" because Congress is presumed to say what it means in a statute. 530 U.S. 1, 6 (2000).

11

*Id.* at 517-18. Benalcazar was uncooperative in producing documents and answering questions about his assets. *Id.* at 518. The landlord filed a motion to show cause, to compel the production of documents, and to sanction the debtor. *Id.* at 518-19. After the debtor's bankruptcy filing, the state court held a hearing where it determined that the motion for sanctions was not stayed, and entered a show cause order requiring the debtor to appear at a hearing and demonstrate to the court why he should not be held in civil contempt for failing to produce the documents and making false statements. *Id.* at 519. The bankruptcy court, however, held that the contempt proceedings were not within the exception created by §362(b)(4) for two primary reasons. *Id.* at 530. First, the proceedings were initiated by the landlord, not the court and, therefore, the hearings were not the actions of a "governmental unit" as defined by 11 U.S.C. §101(27). *Id.* Second, the proceedings "were not brought to enforce any police or regulatory power." *Id.* The court stressed that the civil contempt proceeding was designed primarily to assist the landlord in gathering information that would assist it in collecting its judgment against the debtor, "a private pecuniary goal." *Id.* at 533.

This Court agrees with the reasoning in *Benalcazar*. The exact same thing that is going on in that case is present in the instant case: Ms. Stevens seeks to extract financial information from Ms. Harris that will be helpful in attempting to collect the judgment she has against the her. Ms. Stevens filed the Motion with the state court in order to seek the court's assistance in forcing Ms. Harris to comply. Judge Green made clear during the proceedings that he was basing the determination of whether to continue holding hearings on the matter on Mr. Tozzi's assessment of Ms. Harris' compliance. Ms. Stevens seeks a "private pecuniary goal," one which does not fall within the exception under § 362(b)(4) and is, therefore, subject to the automatic stay.

It should be noted that in *United States v. Coulton*, 594 F. App'x 563, 564 (11th Cir.

12

2014), an unpublished and, therefore, non-binding opinion, the Eleventh Circuit Court of Appeals did cite to *Alpern* in affirming a decision that § 362(b)(4) allowed contempt proceedings to continue against an attorney who had violated a disgorgement order requiring him to return "a grossly excessive fee for representation that was illicit and ineffective." *Coulton* concerned a lawyer ("Roy")[5] who represented a criminal defendant ("Coulton") in Florida while not admitted to practice in the district. *Coulton*, 594 F. App'x at 564. Roy accepted payment from Coulton's wife and other family members in the form of real estate, cash, jewelry, and vehicles, and did not disclose to the different people paying him that he was already being compensated. *Id.* When Coulton moved for sanctions after discovering the over-payments, Roy claimed he had no funds to return to Coulton. *Id.* During the proceedings it was discovered that Roy had hidden and moved assets to avoid collection. *Id.* Before the final contempt hearing Roy filed for bankruptcy and claimed that the proceedings were stayed by § 362(a). *Id.* The court, citing to *Alpern* and *In re Berg,* 230 F.3d 1165 (9th Cir. 2000) (which also concerned a sanction for a frivolous appeal)*,* found that the exemption from the stay did apply. *Id.* at 565-66. Though the court held it was not dispositive of the issue, it was pointed out that the judge presiding over Roy's contempt hearing chose to proceed sua sponte with monetary penalties even after Coulton submitted a notice relinquishing his claim for fees and suggesting Roy perform community service instead. *Id.*

      Facts matter in a case, and the facts in *Coulton* are not the facts before this Court. This Court considers *Coulton* distinguishable from the instant case because the debtor there was an attorney being sanctioned for gross violations of professional misconduct in the very case before the court and the judge "acted purposely to vindicate judicial authority," even after the movant

---

[5] The Eleventh Circuit made it a point to state in its opinion that Roy was disbarred and in prison by the time this appeal reached it.

13

withdrew the request for reimbursement. *Id*. None of those factors are present here.[6]

Ms. Harris is entitled to the same breathing spell from creditor collection action that is afforded all those who file a petition under Chapter 11. The collection of the judgment in the state court proceeding is clearly stayed now and that includes any discovery in that action. Congress was well aware of the inconvenience bankruptcy imposes upon creditors when it came up with its statutory scheme, which includes the automatic stay. This statutory scheme is not a free pass for Ms. Harris though. From a practical standpoint, this statutory scheme also provides Ms. Stevens with remedies in this Court, including but not limited to filing a Motion for a Rule 2004 examination to promptly obtain the same information she sought in the state court proceeding. Ms. Harris cannot escape her obligations for full financial disclosure in this Court. If she does not provide the necessary information in response to discovery requests in this bankruptcy case, this statutory scheme also provides that she could be subject to the same type of sanctions that could have been imposed by Judge Green.

Despite this Court's finding that the contempt proceedings are subject to the stay, the Court does not find that the stay violation (the hearing on August 20th) is a sanctionable one, because it was not knowing and willful, for the following reasons: (1) given that the case was in flux after the exit of Ms. Harris' former state court attorney and Judge Green's expectation that the parties would attend the hearing, it was not unreasonable for Mr. Tozzi to attend the hearing on August 20th and (2) there is some case law to support an argument that the matter was not stayed, although this Court is not persuaded by it. Accordingly, it is hereby

---

[6] This Court views *Coulton* as being limited to the egregious facts in that case perpetrated by an unethical and dishonest attorney who essentially stole from his client and his client's relatives. To the extent the panel in *Coulton* intended for its reasoning to go beyond those facts to hold that every sanction or contempt motion against a non-attorney debtor is exempt from the automatic stay, it chose for its decision to not be binding by not publishing it, and in such event this Court would exercise its discretion to respectfully disagree and would not apply it to the facts of the case before this Court.

14

**ORDERED** that the automatic stay is applicable to the state court proceedings such that the August 20th, 2018 hearing was a violation of the stay, it is further

**ORDERED** that the automatic stay is in place and applicable to any further state court proceedings against the Ms. Harris until terminated or modified by order of this Court or operation of law, such as by the dismissal of the case, and it is further

**ORDERED** that Debtor's motion for sanctions against Defendants Shayla Stevens and Tozzi Law, LLC is **DENIED.**

**END OF
DOCUMENT**

DISTRIBUTION LIST

Tozzi Law LLC
One Decatur Town Center, Suite 200
150 E. Ponce de Leon Ave.
Decatur, GA 30030

William A. Rountree, Esq.
Rountree & Leitman, LLC
2800 B. North Druid Hills Rd, Suite 100
Atlanta, GA 30329

Shayla Stevens
c/o Douglas H. Tozzi, Esq.
Tozzi Law LLC
One Decatur Town Center, Suite 200
150 E. Ponce de Leon Ave.
Decatur, GA 30030

Shayna M. Steinfeld, Esq.
STEINFELD & STEINFELD, PC
P.O. Box 49446
Atlanta, GA 30359

Office of the U.S. Trustee
75 Ted Turner Drive, SW
Atlanta, GA 30303

Shawntae Harris
298 Grandview Circle
Cornelia, GA 30531

17

Case 18-02043-jrs    Doc 14    Filed 10/16/18    Entered 10/16/18 16:10:42    Desc Main
Document    Page 17 of 17